## UNITED STATES v. HAIM et al.

### No. 354.

Circuit Court of Appeals, Second Circuit.

Sept. 14, 1940.

David V. Cahill, of New York City, for petitioner.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith and Albert Lyons, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), in opposition.

Before SWAN, CHASE, and CLARK, Circuit Judges.

PER CURIAM.

In our main opinion we stated our conclusion that the convictions herein could be sustained on the evidence that the defendant Sevecke made three loans for the Bank on the security of the warehouse receipts for Millcreek whiskey after June 5, 1936, at which time, as the proof showed,

he had definite knowledge of the dubious character of the collateral. The papers on this petition now demonstrate—and the prosecution concedes—that the security for two of these loans consisted of receipts for brandy and bourbon whiskey entirely unconnected with the Millcreek whiskey here involved, and that the third loan of $5,000, made to the Sigmund Krauter Importing Company on July 14, 1936, merely paid off and therefore replaced a loan of the same amount to John L. Lotsch made in 1935.

In the light of these facts, the convictions obviously cannot be sustained on the grounds previously stated. We feel we ought to say that, however well intentioned, counsel for the respective parties have not been very helpful in the case. In a misguided attempt to reduce the size of the appellate record, counsel stipulated for the non-printing of exhibits which eventually appeared to us to be crucial; and when we asked the United States Attorney to supply us with the originals, he presented exhibits which set forth these three collateral loans, but contained no explanation of them such as is now given us. We accept, however, the explanation that the many voluminous and indefinite bank records were grounds for the ambiguities which developed.

The United States Attorney now asks us to hold to our previous conclusion on either one of two alternate grounds: that the transfer of the Lotsch obligation to the Krauter Company involved a new and further commitment of the Bank, or that Sevecke knew of the difficulties with the Government over the age of the whiskey long before the last concededly new loan on this collateral which was made on April 13, 1936. It is quite possible that either or both of these assertions may be true in point of fact, but we are constrained to say that we find no convincing evidence to that effect in the record now before us. So far as we can discover, there is nothing to show the effect on the Bank's financial condition of the transfer of the Lotsch obligation; the Bank may even have stood to gain by the transaction for aught that appears. The claim that the new borrower assumed no direct obligation to the Bank beyond the collateral is belied by the form of the borrower's note which names the Bank as payee without reservation.

As to the time when Sevecke learned of the view of the customs officials that the Millcreek whiskey was not as represented,

there is little to add beyond what we stated in our main opinion. True, Lotsch and Krauter knew in the winter of 1936 that some question had developed with the government officials. But there is doubt as to the nature and extent of this knowledge and when Sevecke shared in it. The evidence suggests that the difficulty was of such a nature that it could be overcome by procuring certificates from the distillers; and indeed the first objectors, the food and drug officials, were thus satisfied. The customs officials did raise their objections soon thereafter, but, apparently, or perhaps, more in the nature of a call for proof than as a final decision. Hence Lotsch testified that the "real age certificate trouble" did not come until May, and Sevecke told the customs agent on June 6 that the age certificates had been filed and Haim expected the matter to be straightened out shortly. True, this may all have been only protective coloring to conceal a greater knowledge, but we do not feel that conviction of the crime here charged should rest on what is, after all, only speculation. Hence the judgment against Sevecke cannot stand.

This conclusion requires also a reversal of the judgment against Haim. Haim was convicted of conspiring to abet a bank officer in misapplying bank funds. In the light of what we have just said he cannot be held to have conspired with Sevecke. He may have conspired with Nathan, but Nathan was not an officer of the Bank. We considered the testimony as to Lotsch in our main opinion; we still feel that such evidence alone is not sufficient to support a conclusion of a conspiracy involving Haim and Lotsch. Whatever may have been Haim's misdeeds, this record does not prove him guilty of the conspiracy with which he stands charged.

The petition for rehearing is granted, the judgments of conviction are reversed, and the case is remanded for further proceedings not inconsistent with this opinion.